**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 14-1708-JFW (AGRx)** | Date:  January 13, 2015 |
| Title: | Craig Allen Rogers -v- Equifax Information Services LLC, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):** ORDER GRANTING IN PART, DENYING IN PART CHASE BANK USA, N.A.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, ORDER THAT THERE ARE NO MATERIAL FACTS GENUINELY IN DISPUTE AS TO CERTAIN PLAINTIFF'S DAMAGE CLAIMS [filed 12/8/2014; Docket No. 30]

On December 8, 2014, Defendant Chase Bank, USA, N.A. ("Chase"), erroneously sued as J.P. Morgan Chase Bank, filed a Motion for Summary Judgment or, in the Alternative, Order that There are No Material Facts Genuinely in Dispute as to Certain Plaintiff's Damage Claims.  On December 22, 2014, Plaintiff Craig Allen Rogers ("Rogers") filed his Opposition.  On December 29, 2014, Chase filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's January 12, 2015 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[1]

In this action, Rogers claims that Chase is liable for reporting derogatory information to credit reporting agencies in violation of the Fair Credit Reporting Act and the California Consumer

---

[1]To the extent any of these facts are disputed, they are not material to the disposition of this motion.  In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

Credit Reporting Agencies Act.

    **A.    History of the 1505 Account and the 4931 Account.**

Chase opened credit card account xxxx-xxxx-xxxx-1505 (the "1505 Account") for Rogers via an internet application on May 24, 2007. Chase sent monthly billing statements to Rogers at his correct address of record in Spring Valley, California through September 28, 2007.

On or about October 22, 2007, Chase received a request to change the address on the 1505 Account to 3125 Park Avenue, Apartment 11C, Bronx, New York. To verify the validity of this request, Chase sent a letter to Rogers at his address of record in Spring Valley, California on October 22, 2007. In response to Chase's letter, Rogers called and notified Chase that he had not moved to New York. During the call, Rogers confirmed that he was responsible for all of the charges on the 1505 Account through October 26, 2007. Because of the possibility of fraud, Chase immediately closed the 1505 Account and, on the same day, transferred Rogers' existing balance to account xxxx-xxxx-xxxx-4931 (the "4931 Account").

On February 11, 2008, Chase received a request to change the address on Rogers' new 4931 Account to the Bronx address. To verify the validity of this request, Chase again sent a letter to Rogers at his address of record in Spring Valley, California. On February 18, 2008, Rogers called Chase and again informed Chase that he had not moved to New York. As a result, Chase blocked the 4931 Account so that it could not be used. The billing statements reflect that timely payments had been made on the 4931 Account through February 2008.

Despite being advised that the Bronx address was not Rogers' correct address, Chase erroneously sent the billing statements for the 4931 Account for the periods ending February 28, 2008 through July 28, 2008 to the Bronx address rather than to Rogers' correct California address. Because Rogers made no payments on the 4931 Account during this time, late fees and finance charges were assessed on the outstanding balance in March, April, May, June, and July of 2008. Chase reported the delinquencies on the 4931 Account to the three main credit reporting agencies.

In August 2008, Chase finally realized its error and removed the incorrect Bronx address from the 4931 Account. After Chase corrected the error, Chase resumed sending the monthly statements, including the statements for the periods ending August 28, 2008 and September 28, 2008, to Rogers' correct California address. Because there was an unpaid and "charged off" balance of $7,625.31 as of September 28, 2008, Chase filed a collection lawsuit against Rogers on October 8, 2008.

    **B.    Rogers disputes Chase's derogatory reporting of the 4931 Account.**

On September 25, 2008 and October 6, 2008, Rogers submitted disputes to the three main credit reporting agencies, including Equifax, regarding the accuracy or completeness of the information provided by Chase with respect to the 4931 Account.[2] In response to each of these

---

[2] Rogers submitted two disputes on September 25, 2008 and three more disputes on October 6, 2008.

disputes, the credit reporting agencies sent an Automated Consumer Dispute Verification to Chase (the "2008 ACDVs"). Declaration of Pieter A. Post ("Post Decl.") at ¶ 10, Exhibit 9. According to the 2008 ACDVs, Rogers disputed the "present/previous Account Status/Payment History Profile/Payment Rating" and claimed that the 4931 Account was either fraudulently opened, taken over, or used by an identity thief. *Id.*

On September 26, 2008, Rogers also sent Chase a letter which explained the history of the 4931 Account, and stated "you have slanderously reported me as delinquent to all credit reporting agencies when I have not received a valid accurate statement from you since the closing date of January 28, 2008 to pay from." Declaration of Craig Allen Rogers ("Rogers Decl.") at ¶ 3, Exhibit 37. Because Rogers acknowledged in his letter that he had incurred and was responsible for all of the relevant charges through October 23, 2007, Chase rejected Rogers' claims of fraud or identity theft in the 2008 ACDVs, and continued to report the 4931 Account as delinquent or past due or "charged off."

On October 24, 2008, Arthur Shwachman of the Chase Legal Department responded to Rogers' September 26, 2008 letter. Post Decl. at ¶ 12, Exhibit 11. Although Mr. Shwachman noted that all charges on the 4931 account appeared to be valid, he acknowledged the "inconvenience" experienced by Rogers "due to the attempted fraud" and offered to settle the account for a single lump-sum payment of $3,342.43 (half of the outstanding balance), payable in 60 days. *Id.* As part of this settlement offer, Chase offered to file a dismissal of the lawsuit filed against Rogers, and to instruct all three major credit reporting agencies to delete the 4931 account from Rogers' credit records once payment was made. *Id.*

Although Rogers rejected Chase's offer, he made a written counteroffer in which he would pay the sum of $3,342.43 in nine equal monthly payments, provided that Chase would "immediately withdraw the derogatory reporting on all three credit reporting agencies" and that, after the nine monthly payments were made, "report this account as 'Paid Satisfactorily' and NOT as a charge off to all credit reporting agencies." Post Decl. at ¶ 13, Exhibit 12. On December 30, 2008, Chase agreed to Rogers' monthly payment terms in a letter, which states: "As to the account ending in 4931, we are willing to settle that account for $3,342.43 paid out over 9 months as per your request. . . .A settlement letter outlining the terms of the settlement will be mailed to you shortly." Post Decl. at ¶ 14, Exhibit 13. On December 31, 2008, Chase sent a letter confirming that Chase would accept $3,342.43 as settlement in full, in accordance with an attached payment schedule. Post Decl. at ¶ 14, Exhibit 14. In the December 30, 2008 and December 31, 2008 letters, Chase made no reference to removing any derogatory reporting or deleting the account from Rogers' credit file.

On January 7, 2009, Rogers sent another letter to Chase, enclosing the first of the nine monthly payments. In that letter, he complained that his credit reports showed that Chase was continuing to report derogatory information, including, for example, that it had charged off the 4931 Account as a bad debt. Post Decl. at ¶ 14, Exhibit 15. On January 29, 2009, Mr. Shwachman responded to Rogers' letter, stating in relevant part:

> Our office is in receipt of your letter dated January 7, 2009 and consideration of the facts and circumstances regarding the above-referenced account, our office will reverse the charge-off and have your credit report show the account as zero days

> delinquent. Please continue to make your settlement payments and once the final settlement has been sent to us, contact my office so that we may inform the credit reporting agencies that the account has been *settled in full*.

Post Decl. at ¶ 15, Exhibit 16 (emphasis added). Unbeknownst to Rogers, "settled in full" is considered a negative or derogatory comment on a credit report. Rogers did not respond to Mr. Shwachman's letter, and on February 5, 2009, Chase instructed the credit reporting agencies to change the charge-off and to report the 4931 Account with no delinquencies and "paying as agreed." Post Decl. at ¶ 16, Exhibit 17.

Rogers timely made the nine monthly payments pursuant to his agreement with Chase, and, on October 13, 2009, Chase requested dismissal of its collection lawsuit against Rogers. Post Decl. at ¶ 17, Exhibit 18. After the lawsuit was dismissed, Chase reported the 4931 account as "paid in full for less than full balance" and "paid/closed with zero balance."

On November 23, 2009, Rogers sent yet another letter to Chase, complaining that Chase was still reporting damaging data to the credit reporting agencies in violation of their agreement, and demanding Chase to correct its inaccurate reporting immediately. Post Decl. at ¶ 18, Exhibit 20. For some unknown reason, Chase ignored Rogers' letter.

Chase had no contact with Rogers until April 2013, when it received another Automated Consumer Dispute Verification or "ACDV" from Equifax. Post Decl. at ¶ 19, Exhibit 21. At this time, Equifax was still reporting the 4931 Account as "charged off". The April 2013 ACDV stated that Rogers claimed that the 4931 Account had been fraudulently taken over, that fraudulent charges had been made on the account, and that "this is not a Charge Off as claimed by Chase." *Id.* In response to the ACDV, Chase instructed Equifax to remove that notation, but continued to report the account as "paid in full for less than the full balance." *Id.*

On June 28, 2013, Rogers sent another letter to Chase, again complaining that Chase was reporting derogatory information and specifically complaining that Chase was reporting the 4931 Account as "Paid for Less than Balance Due" in violation of his understanding of their agreement. Post Decl. at ¶ 20, Exhibit 23. On July 19, 2013, Vanessa Duckworth of Chase responded to Rogers' letter, acknowledging that "[a]s part of the terms of [the] agreement, we agreed to delete the account from your credit file upon successful completion of the settlement." Post Decl. at ¶ 21, Exhibit 24. Ms. Duckworth stated that Chase would instruct the credit reporting agencies to delete the 4931 Account from Rogers' credit file. *Id.* In accordance with Ms. Duckworth's letter, on July 15, 2013, Chase sent an "Automatic Universal Data form" or "AUD" instructing the credit reporting agencies to delete the 4931 Account. Post Decl. at ¶ 21, Exhibit 25.

However, around this same time in July 2013, Chase received another ACDV from Equifax, which stated that Rogers was claiming "true identity fraud" and that the account had been fraudulently opened. Post Decl. at ¶ 19, Exhibit 22. On July 20, 2013, just five days after it instructed the credit reporting agencies to delete the 4931 Account, Chase mistakenly responded to this ACDV by confirming that the account was "paid in full for less than the full balance" and changing the payment rating from "current account" to "Charge-Off." *Id.* Because of Chase's clearly erroneous response to this ACDV, Equifax never deleted the 4931 Account from Rogers' credit file, and continued to report the account as "paid in full for less than full balance" and as

charged off.

### C. Rogers attempts to refinance his home.

Although Rogers made several attempts to refinance his home in 2013, he claims that his loan applications were denied due to the derogatory items appearing in his credit reports. For example, on July 9, 2013, Certus Bank would not process Rogers' loan application because Rogers had disputes with CITI, IndyMac, and Chase. Declaration of George G. Weickhardt ("Weickhardt Decl.") at ¶ 5, Exhibit 31. Similarly, on September 16, 2013, DLJ Financial denied his loan application, stating that FreddyMac would not process his loan because of "too many disputed accounts," listing the Chase 4931 Account, as well as a CitiBank MasterCard account and a Macy's account. Weickhardt Decl. at ¶ 4, Exhibit 30.

### D. Rogers files this action.

On March 7, 2014, Rogers filed the Complaint in this action, alleging the following claims for relief against Chase and Equifax Information Services LLC ("Equifax"):[3] (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.; and (2) violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a).

After Rogers filed this action, Chase finally realized that Equifax was still erroneously reporting the account as "paid for less than full balance" and as charged off. Accordingly, on April 4, 2014, Chase sent a "Universal Data Form" to the credit reporting agencies, instructing them to delete the 4931 Account from Rogers' credit file. Post Decl. at ¶ 22, Exhibit 26. On August 14, 2014, after Chase instructed the credit reporting agencies to delete the 4931 Account, Rogers successfully refinanced his home.

Chase moves for summary judgment on the following grounds: (1) Rogers' FCRA and CCRAA claims fail because Chase did not report factually inaccurate information; (2) Rogers' FCRA and CCRAA claims fail because Chase conducted a reasonable investigation in light of the notice it received regarding the nature of Rogers' dispute; (3) Rogers' FCRA claims based on the 2008 ACDVs are barred by the statute of limitations; and (4) all of Rogers' CCRAA claims are barred by the statute of limitations. In the alternative, Chase seeks a determination that there are no material facts in dispute as to certain of Rogers' claimed damages.

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.

---

[3]Equifax reached a settlement with Rogers during private mediation on December 3, 2014.

*Id.* at 250; Fed. R. Civ. P. 56(c), (e). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.* 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

In ruling on a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." *Id.* at 255.

### III. DISCUSSION

#### A. Rogers has raised genuine issues of material fact as to whether Chase reported inaccurate, misleading, or incomplete information.

Chase moves for summary judgment as to Rogers' claims under the FCRA and CCRAA in part because it claims that the undisputed facts demonstrate that it did not report factually inaccurate information. The Court disagrees and concludes that there are genuine issues of material fact as to whether Chase reported inaccurate, misleading, or incomplete information.

Pursuant to the FCRA, 15 U.S.C. § 1681s-2(b), after receiving notice of a dispute regarding the completeness or accuracy of any information provided to a credit reporting agency ("CRA"), a furnisher of credit information, such as Chase, has a duty to conduct an investigation with respect to the disputed information and, if that investigation reveals that the information is "incomplete or inaccurate," the furnisher must report those results to all CRAs. 15 U.S.C. § 1681s-2(b)(1); *see also Drew v. Equifax Information Services, LLC*, 690 F.3d 1100, 1107 (9th Cir. 2012) ("If the investigation found a problem with the previously reported information, the FCRA then dictates that Chase must rectify past misreporting by informing the CRAs of the problem."). Pursuant to section 1785.25(a) of the CCRAA, "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Accordingly, in order prove his claim under either the FCRA or CCRAA, Rogers must establish that the information in his credit report is "incomplete or inaccurate." *See Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010)

The Ninth Circuit has held that "[a]n item on a credit report can be 'incomplete or inaccurate'

within the meaning of the FCRA's furnisher investigation provision . . . 'because it is patently incorrect, *or* because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)) (emphasis added). The "incomplete or inaccurate" requirement under the CCRAA has been similarly interpreted: A report violates the CCRAA "when it is misleading or incomplete, even if it is technically accurate." *See Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 579 (1995).

Chase argues that Rogers' FCRA claims fail because its reporting of the 4931 Account as "paid in full for less than the full balance" was "factually accurate," heavily relying on *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010). However, Chase ignores *Carvalho*'s holding that a credit report may be "incomplete or inaccurate" even if it is technically accurate, but "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." In light of the evidence that Chase offered and agreed to reduce the balance of the 4931 Account and to delete the account and/or remove all derogatory reporting of the 4931 Account from Rogers' credit file, a jury could find that, even if technically accurate, Chase's reporting of the 4931 Account as "charged off" or "paid in full for less than the full balance" was, at the very least, misleading or incomplete. Accordingly, Chase's motion for summary judgment on these grounds is **DENIED**.

> **B.** **Certain Claims and Damages are Barred by the Statute of Limitations.**

Chase also moves for summary judgment on Rogers' FCRA claims based on the 2008 ACDVs and all of Rogers' CCRAA claims on the grounds that they are barred by the applicable statute of limitations. The Court agrees that Rogers' FCRA and CCRAA claims arising in 2008 and 2009 are barred by the applicable statute of limitations, but concludes that his claims arising in 2013 are not time-barred.

> 1. FCRA

An action under the FCRA must be brought "not later than then the earlier of -- (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

As discussed *infra*, Chase's duties to investigate and correct inaccurate or incomplete information under 15 U.S.C. § 1681s-2(b) do not arise until after Chase receives notice of the dispute from a CRA. Moreover, "an FCRA violation is tied to the reasonableness of an investigation rather than the accuracy of the results." *Drew v. Equifax Information Services, LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012). In other words, Chase may be liable "not for an investigation that produces incorrect results, but for an unreasonable investigation." *Id.* Thus, the FCRA violation, if any, occurred on the date that Chase completed its investigation.

Based on the undisputed evidence, the Court concludes that Rogers' FCRA claims based on the 2008 ACDVs are barred by the statute of limitations. Chase completed its investigation with respect to those ACDVs no later than October 2008. Accordingly, all claims arising from the 2008 ACDVs expired, at the very latest, in October 2013, five years after the date on which the alleged

violations occurred. Rogers, however, did not file his Complaint in this action until March 7, 2014, and his claims based on the 2008 ACDVs are therefore barred by the five-year statute of limitations.

Moreover, the evidence demonstrates that Rogers discovered any alleged violations based on the 2008 ACDVs by November 2009. Indeed, in his letter dated November 23, 2009, more than a year after he submitted his 2008 disputes to the credit reporting agencies, Rogers unequivocally states that, despite Chase's promise to do otherwise, Chase was "still reporting damaging data to the Credit Reporting Agencies." Post Decl. at ¶ 18, Exhibit 20. Thus, because Rogers discovered his FCRA claims based on the 2008 ACDVs more than two years before filing this action, his claims based on the 2008 ACDVs are also barred by the two-year statute of limitations.

Rogers attempts to invoke the "continuing violations" doctrine to save his barred FCRA claims. However, Rogers ignores the fact that an alleged violation of 15 U.S.C. § 1681s-2(b) arises from a discrete event: failure, upon receiving notice from a CRA of a dispute, to conduct a reasonable investigation and inform the CRAs of incorrect or incomplete information. Moreover, Rogers ignores the undisputed fact that there is gap of more than three years between his November 23, 2009 letter to Chase and his next communication with Chase via the April 2013 ACDV. As a result, there is no evidence that there was a continuing pattern or course of conduct that would warrant application of the continuing violations doctrine to save his claim.

      2.   <u>CCRAA</u>

Chase contends that all of Rogers' CCRAA claims are barred by the CCRAA's statute of limitations. Pursuant to Cal. Civ. Code § 1785.33, an action for violation of the CCRAA must be brought "within two years from the date the plaintiff knew of, or should have known of, the violation of this title, but not more than seven years from the earliest date on which liability could have arisen . . . ." A violation of section 1785.25(a) of the CCRAA arises when a person furnishes information on a specific transaction or experience to any consumer credit reporting agency that the person knows or should know is incomplete or inaccurate. Cal. Civ. Code § 1785.25(a).

For the same reasons previously discussed, the Court concludes that Rogers' CCRAA claims based on Chase's conduct in 2008 and 2009 are time-barred. Indeed, by November 23, 2009, Rogers discovered that Chase was reporting derogatory information that Chase allegedly knew or should have known was incomplete or inaccurate, and Rogers filed his Complaint more than two years later. However, contrary to Chase's argument, the Court concludes that Rogers has raised genuine issues of material fact as to whether Chase committed new CCRAA violations in 2013 by re-furnishing information to Equifax that it knew or should have known was incomplete or inaccurate. For example, on July 20, 2013, just five days after Chase directed Equifax to delete Rogers' account, Chase mistakenly reported the 4931 Account to Equifax as charged off and "paid in full for less than the full balance." Accordingly, the Court concludes that only Rogers' CCRAA claims based on Chase's conduct in 2008 and 2009 are time-barred.

    **C.**   **There are genuine issues of material fact as to whether Chase conducted a reasonable investigation based on the notice it received regarding the nature of Rogers' dispute.**

Chase also argues that Rogers' FCRA and CCRAA claims fail because the undisputed facts demonstrate that it conducted a reasonable investigation based on the notice it received regarding the nature of Rogers' dispute. Because the Court concludes that Rogers' claims arising in 2008 and 2009 are time-barred, the Court will only address Rogers' claims arising in 2013.

Section 1681s-2(b)(1) of the FCRA imposes various duties on furnishers of credit information. It provides that, after receiving a notice of dispute, the furnisher shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the [CRA];

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . .; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), . . .

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). It is well settled in the Ninth Circuit that these duties "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under [15 U.S.C. § 1681s-2(b)(1)]." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Moreover, "[s]uch notice must include 'all relevant information regarding the dispute that the [CRA] has received from the consumer.'" *Id.* at 1157 (quoting 15 U.S.C. § 1681s-2(b)(1)).

Once the furnisher has received notice of a dispute from a CRA, the furnisher must then conduct a reasonable investigation in light of what it learned about the nature of the dispute from the CRA. Indeed, as the Ninth Circuit stated in *Gorman*:

It is from this [CRA] notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation. The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.

584 F.3d at 1157. However, the Ninth Circuit also cautioned: "In deciding that the notice

determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken." *Id.* at 1157 n.1.

In determining whether Chase is entitled to summary judgment as to the reasonableness of its investigation in response to the notices it received from the CRAs, the Court recognizes that:

> [S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment. However, summary judgment is not precluded altogether on questions of reasonableness. It is appropriate when only one conclusion about the conduct's reasonableness is possible.

*Id.* at 1157 (quotations and citations omitted).

In this case, the Court concludes that there are genuine issues of material fact as to whether Chase conducted a reasonable investigation in response to the April 2013 and July 2013 ACDVs. In the April 2013 ACDV, Equifax provided the following information to Chase concerning Rogers' dispute regarding his 4931 account: "Claims account take-over; fraudulent charges made on account. Verify signature, provide or confirm complete ID. This is not a Charge Off as claimed by Chase. Many charges made to this account by Identity Thief in late 07 and early 08. Chase was advised in writing yet continue 5 years later to cause me real DAMAGES by not correcting fraudulent information." Post Decl. at ¶ 19, Exhibit 21. In response, after determining that it was not properly reporting the 4931 Account as a "Charge-Off," Chase directed Equifax to delete the "Charge-Off" notation but Chase continued to report the 4931 Account as "paid in full for less than the full balance." Given that Rogers specifically disputed the "charge off" notation and Chase was referred to Rogers' correspondence with Chase during the past 5 years, which fully explained the nature, origin, and extent of his dispute, the Court concludes that there are triable issues of fact as to whether Chase, as part of a reasonable investigation, should have also determined that all negative reporting should have been removed and/or, as it subsequently determined, that the 4931 Account should have been deleted from Rogers' credit file.

Likewise, the Court concludes that there are genuine issues of material fact as to whether Chase conducted a reasonable investigation in response to the July 2013 ACDV. In the July 2013 ACDV, Equifax provided the following information to Chase concerning Rogers' dispute regarding the 4931 account: "Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." Post Decl. at ¶ 19, Exhibit 22. Unlike the April 2013 ACDV, the July 2013 ACDV only refers to identity fraud. However, as a result of its investigation of the July 2013 ACDV, rather than simply confirming that the 4931 Account belonged to Rogers, Chase actually changed the "payment rating" of the account from "current account" back to "charge off." *Id.* Chase's response effectively negated its response to the April 2013 ACDV (which had determined that its reporting of the 4931 Account as charged off was erroneous) as well as its instruction to Equifax just five days prior, on July 15, 2013, to delete the 4931 Account. Even if the July 2013 ACDV did not clearly trigger Chase's duty to investigate the "payment rating" of the 4931 Account, Chase did in fact conduct such an investigation. In light of Chase's unilateral expansion of its investigation beyond identity fraud and the fact that its response conflicted with its April 2013 ACDV response and its instruction to delete the account on July 15, 2013, the Court concludes that there are triable

issues of fact as to the reasonableness of Chase's investigation in response to the July 2013 ACDV.

Chase's argument is even weaker with respect to Rogers' claims under the CCRAA, Cal. Civ. Code § 1785.25(a). Unlike section 1681 s-2(b) of the FCRA, section 1785.25(a) of the CCRAA does not require that notice of the dispute be provided by a credit reporting agency. *See Vartanian v. Portfolio Recovery Associates, LLC*, 2013 WL 877863, at *5 (C.D. Cal. Mar. 7, 2013) ("Section 1785.25(a) lacks § 1681s-2(b)'s CRA-dispute-notification trigger. Unlike with the FCRA claims, here it does matter that [plaintiff] allegedly sent three dispute letters directly to [the furnisher]."). In light of Rogers' detailed correspondence with Chase in 2013, Chase cannot claim that it was unaware that Rogers contended that the 4931 Account should be deleted from his credit report.

Accordingly, Chase's motion for summary judgment as to Rogers' claims arising in 2013 is **DENIED.**

### D. Damages

Finally, Chase moves for a determination that there are no material facts in dispute as to certain of Rogers' claimed damages. Given that Rogers' claims based on Chase's 2008 and 2009 conduct are barred by the applicable statute of limitations, the Court concludes that any alleged damages arising out of that conduct are also barred. With respect to Rogers' claims for damages arising in 2013, although the Court doubts that Rogers will be able to establish that he is entitled to those damages, the Court concludes that Chase has failed to demonstrate that it is entitled to summary judgment as to those damages.

## IV. CONCLUSION

For the foregoing reasons, Chase's Motion for Summary Judgment or, in the Alternative, Order that There are No Material Facts Genuinely in Dispute as to Certain Plaintiff's Damage Claims is **GRANTED in part, DENIED in part**.

IT IS SO ORDERED.